**IT IS ORDERED as set forth below:**



**Date: April 15, 2021**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:

NRCT, LLC,

      Debtor.

CASE NO. 15-58444-WLH

CHAPTER 11

### ORDER ON FINAL APPLICATION FOR COMPENSATION FILED BY
### MORRIS, MANNING & MARTIN, LLP

**THIS MATTER** is before the Court on the Sixth and Final Application for Compensation

and Supplement to Final Fee Application (Case No. 15-58444 Doc. No. 173) (the "Application")

and the Supplement to Final Fee Application (Case No. 15-58444 Doc. No. 179) filed by Morris,

Manning & Martin, LLP, pursuant to which it seeks final approval of all fees paid to it under the

First through Fifth Applications in the amount of $236,332.46, together with an additional

$4,757.12 of fees deferred from the Fifth Interim Fee Application, $18,643.43 included in the Sixth

and Final Application, $15,953.00 incurred between November 16, 2020 and January 7, 2021, and reductions of $15,169.75 based on the Court's order in the Sugarloaf case, for a total of $260,516.26.[1]

## I. FACTS

NRCT, together with its affiliates, Bay Circle Properties, LLC ("Bay Circle"), DCT Systems Group, LLC ("DCT"), Sugarloaf Centre, LLC ("Sugarloaf"), and Nilhan Developers, LLC ("Nilhan Developers") (collectively the "Debtors"), each filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 4, 2015. On June 8, 2015, the Court administratively consolidated the Debtors' cases. The manager of each of the Debtors is Chuck Thakkar ("Mr. Thakkar"). Ownership in each debtor differs somewhat but, in general in each debtor, ownership is held by some combination of Mr. Thakkar, his children Rohan and Niloy, his wife, and/or a company which some combination of the Thakkar family owns.

The immediate reason for filing bankruptcy was a default by the Debtors on a series of loan agreements with Wells Fargo Bank, N.A.[2] Eleven days into the case, Wells Fargo filed a Motion for the Appointment of a Chapter 11 Trustee (Case No. 15-58440 Doc. No. 12). After an evidentiary hearing, the Court denied the request and appointed an examiner instead (Case No. 15-58440 Doc. No. 134). The examiner served until November 30, 2016 and prepared several reports regarding the Debtors, their cash management systems, and intercompany debts (Case No. 15-58440 Docs. Nos. 157, 274, 304, and 414).

---

[1] The Court entered orders on similar issues on MMM's Final Application for Compensation in the Sugarloaf and Nilhan Developers cases (Case No. 15-58442 Doc. No. 201 & Case No. 15-58443 Doc. No. 253).

[2] Wells Fargo Bank, N.A. began its association with the Debtors in 2008. The history is set out in several prior orders issued by the Court, including the Order Denying Substantive Consolidation (Case No. 15-58440 Doc. No. 797). In short, Wells Fargo, the Debtors, and related entities executed a series of promissory notes pursuant to which the Debtors guaranteed the obligations and the indebtedness owed under the notes. The obligations were secured by collateral including real and personal property owned by the Debtors. In April 2015, Wells Fargo sent a notice to all obligors accelerating the maturity of all amounts due and stating it intended to foreclose on real property collateral on May 15, 2015. The notice precipitated the Debtors' bankruptcy filings.

The obligations to Wells Fargo were secured by certain real property owned by the Debtors. Wells Fargo, the Debtors, and other non-debtor entities including Chuck, Niloy, and Rohan Thakkar executed a Settlement Agreement on November 18, 2015 in which Wells Fargo agreed to forbear from enforcing obligations and performance owed by the Debtor and other loan parties (the "Settlement Agreement"). The Settlement Agreement was amended on January 8, 2016 and approved by the Court on January 13, 2016 (Case No. 15-58440 Doc. No. 302). The Settlement Agreement required the full amount of the debt to Wells Fargo to be paid by April 30, 2017 and set various deadlines for interim payments and release prices for the collateral. If Wells Fargo was not paid in full by April 30, 2017, it could record deeds-in-lieu of foreclosure on certain of NRCT's property and property of the other Debtors without further hearing. After the Settlement Agreement was finalized and approved, Wells Fargo assigned its interest and claim to Bay Point Capital Partners, L.P. ("Bay Point").

The first several months of these cases were devoted to the Debtors liquidating or refinancing various pieces of property to meet milestone payment deadlines agreed to by Wells Fargo. All of the Debtors except NRCT liquidated property to satisfy Wells Fargo. NRCT held only non-income producing real property and did not liquidate any real property to pay Wells Fargo. As one of the milestone payments was approaching, Bay Circle sought to sell its property. Good Gateway, LLC and SEG Gateway, LLC (collectively "Gateway") held a judgment lien on Mr. Thakkar's one-half interest in the Bay Circle property when Mr. Thakkar conveyed the property to Bay Circle. Gateway objected that its interest in the Bay Circle property was unnecessarily lost and asked for adequate protection of the lien it lost by virtue of the sale of the Bay Circle property. The Court approved the sale and provided Gateway a replacement lien on Bay Circle's claims for contribution and subrogation ("Contribution Claim") (Case No. 15-58440

Doc. No. 797) (the "AP Order"). The Court later modified the AP Order (Case No. 15-58440 Doc. No. 1125), as will be discussed in more detail below.

Behind the scenes, these bankruptcy cases have been impacted and driven to a certain extent by litigation between Mr. Thakkar and his family, on the one hand, and Gateway, on the other. Gateway obtained judgments in the amounts of $2.5 million and $12 million against Mr. Thakkar, NCT Systems, Inc, and other non-debtor entities in a Florida state court. Due to subsequent litigation, Gateway claims multiple interests in the Debtors' cases, including an interest in NRCT (by way of a judgment it holds against Rohan Thakkar, who is a 50% owner of NRCT); 50% of any recovery by Nilhan Financial, LLC, a creditor of the Debtors; and the adequate protection claim in the Bay Circle case.

Gateway filed claims in the cases, all of which were disallowed except the claim in Bay Circle. Gateway also filed a Motion for Relief from Stay (Case No. 15-58440 Doc. No. 307) early in the cases seeking to continue litigation in the Florida courts, which the Court denied (Case No. 15-58440 Doc. No. 380). The parties remain determined to litigate though, as evidenced by the numerous cases filed in this Court, Florida, and elsewhere. In fact, Mr. Thakkar has testified that he will continue to litigate with Gateway forever. (See Transcript of Hearing on December 4, 2020, Case No. 15-58440 Doc. No. 936 at 147 line 12 (Mr. Thakkar stated he intended to appeal "till I die.")). In these bankruptcy cases, there have been seven adversary proceedings and more appeals, although not all are directly related to Gateway. Gateway has also continued its collection efforts outside of bankruptcy. (See Case No. 15-58443 Doc. No. 206.)

On December 11, 2018, after notice and a hearing, the Court appointed a Chapter 11 Trustee in all five cases (Case No. 15-58440 Doc. No. 919). The appointment was triggered by Mr. Thakkar's actions in the Nilhan Developers case. In short, without notifying the Court or his

4

counsel and without Court approval, Mr. Thakkar exercised an option to re-acquire property for over $9 million and incurred unauthorized secured post-petition financing in that amount from an insider (for over $5 million) and a third party.  The Court appointed Ronald L. Glass as Chapter 11 Trustee for all the Debtors (Case No. 15-58440 Doc. No. 922).   Mr. Thakkar sought reconsideration of the order appointing a trustee (Case No. 15-58440 Doc. No. 947), which the Court considered at a hearing on February 7, 2019 and denied (Case No. 15-58440 Doc. No. 1248).

The Trustee sought to retain Morris Manning and Martin, LLP ("MMM") as his counsel. Mr. Thakkar objected to the retention of MMM, and MMM filed a brief in support of the Trustee's application.  The Court considered the Application to Retain MMM at a hearing on January 17, 2019, at which Mr. Thakkar voiced opposition to MMM's retention since MMM had potentially represented entities with interests adverse to Mr. Thakkar personally or other non-debtor entities. The Court instructed Mr. Thakkar to provide MMM with a list of parties against which the firm should check for conflicts.  Mr. Thakkar failed to provide a list of entities as instructed, so MMM researched other Thakkar entities, ran a conflicts check on over 100 entities, and filed a supplemental brief and affidavit in support of its retention (Case No. 15-58440 Docs. Nos. 970 & 971).   The Court held a continued hearing on February 7, 2019, after which the Court approved the retention of MMM (Case No. 15-58440 Doc. No. 976).

At the initial status conference with the Trustee on December 18, 2018, the Court requested the Trustee address several issues including: assessing the potential Contribution Claim of Bay Circle, resolving pending litigation, and bringing these cases to a final disposition.  The Trustee reviewed the assets and liabilities of each debtor and filed a Status Report on February 26, 2019 with his initial findings and questions (Case No. 15-58440 Doc. No. 983).  After a failed attempt at mediating a global settlement of all issues, including those involving Gateway, the Trustee

moved forward in each case to bring matters to a posture to be decided by the Court. At that point, the cases were all taking different paths to resolution and the cases were severed on May 5, 2020 (Case No. 15-58440 Doc. No. 1420).

A.   Facts Regarding NRCT

On the petition date, NRCT owned 9.9 acres of undeveloped property located on Tench Road, Gwinnett County, Georgia (the "Tench Road Property") (Case No. 15-58440 Doc. No. 793). NRCT filed a motion seeking approval of a sale of the Tench Road Property on October 24, 2017, which was granted on December 5, 2017 (Case No. 15-58440 Doc. No. 817). On August 12, 2019, the Trustee sold the Tench Road Property to JBGL Atlanta Development 2014, LLC for $2 million, generating proceeds in the amount of $1,985,865.06 (Case No. 15-58440 Doc. No. 1185). NRCT also scheduled undeveloped real property on Peachtree Industrial Road in Gwinnett County and Block Knob, Pickens County, and a residential lot in Greenwood, South Carolina for a total value of over $6 million. Finally, NRCT scheduled investments in two Asia funds, with an approximate value of $2 million.

Wells Fargo held a deed to secure debt and deed in lieu of foreclosure secured by NRCT's Tench Road and Peachtree Industrial Road properties. After the Settlement Agreement with Wells Fargo was approved, Wells Fargo's interests and claims were assigned to Bay Point. The other Debtors liquidated property to satisfy the Bay Point debt. Bay Point did not release the deed to secure debt executed by NRCT in favor of Wells Fargo and continued to hold deeds in lieu on NRCT's two properties. Bay Point contended that, pursuant to the Settlement Agreement, it was entitled to indemnification and reimbursement from the Debtors for fees and expenses incurred in connection with the bankruptcy cases and litigation filed by Mr. Thakkar and DCT related to Bay Point's foreclosure of DCT's property. The Trustee contended that Bay Point had already received

all the funds to which it was entitled. The Trustee and Bay Point negotiated a settlement pursuant to which Bay Point agreed, in part, to provide the Trustee with the unrecorded deeds in lieu and release all liens against the Debtors and/or any property owned by any debtor, including property owned by NRCT. The Trustee filed a motion seeking approval of the settlement with Bay Point (Case No. 15-58440 Doc. No. 1029), on April 24, 2019, which the Court granted on June 10, 2019 (Case No. 15-58440 Doc. No. 1089), after Court directed modification as discussed below.

B.    Contribution Claim

As noted above, when the Court approved the sale of Bay Circle's property, the Court provided Gateway with a Contribution Claim (Case No. 15-58440 Doc. No. 797). When the Trustee was appointed, the Trustee was tasked with investigating the potential Contribution Claim of Bay Circle against NRCT and any other Debtors or entities. The Trustee asked GlassRatner to use its expertise and analyze possible claims by Bay Circle against the other Debtors and non-debtors, taking into account payments made by the different Debtors and other obligors both before and after the filing of the petition. On March 27, 2019, the Trustee filed his Preliminary Analysis Regarding Bay Circle's Contribution Claim (Case No. 15-58440 Doc. No. 1007) ("Preliminary Report") with a chart showing the payments made by the Debtors to Wells Fargo and Bay Point. The Trustee sought additional information to complete the analysis, and Paul Dopp of GlassRatner conducted an analysis and produced a report suggesting possible claims based on various assumptions (the "Dopp Report").

On April 29, 2019, the Trustee filed a Motion Requesting Determination of the Amount of Debtor Bay Circle's Contribution Claim (Case No. 15-58440 Doc. No. 1030), attaching the Dopp Report ("Motion to Determine Claim"). The Trustee requested the Court enter an order holding Bay Circle has a contribution claim against NRCT and each of the non-debtor obligors in the

amount of $2,675,000.  Mr. Thakkar and Saloni Thakkar, Niloy and Rohan Thakkar, and Gateway

all filed responses (Case No. 15-58440 Docs. Nos. 1066, 1067, & 1068).  The Thakkars objected

to the procedural posture of the motion and argued it was not appropriate for the Trustee to pursue

a claim on behalf of Bay Circle against NRCT since he served as trustee of both.  Gateway argued

in favor of calculating Bay Circle's Contribution Claim using all co-obligors, not just the Debtors.

The Court held a hearing on May 30, 2019, at which it heard the Motion to Determine

Claim, the motion to approve the settlement with Bay Point, and MMM's First Interim Fee

Application.  The hearing is discussed in more detail below.  The Court required a modification to

the Bay Point settlement agreement, approved MMM's fees on an interim basis, and entered a

scheduling order on May 31, 2019 (Case No. 15-58440 Doc. No. 1080).  Among other things, the

Scheduling Order instructed parties-in-interest to submit papers about whether the Court should

modify its AP Order and directed the Trustee to file a motion for approval of any arrangement

whereby Gateway may prosecute the Contribution Claim of Bay Circle.

The Trustee filed a Position Statement Regarding Modification of the Court's AP Order as

it Relates to Subrogation (Case No. 15-58440 Doc. No. 1092).  Mr. Thakkar and Saloni Thakkar

and Niloy and Rohan Thakkar filed supplemental briefs in which they requested the Court modify

its AP Order (Case No. 15-58440 Docs. Nos. 1099 & 1101).  Gateway filed a response asserting

the AP Order should stand (Case No. 15-58440 Doc. No. 1100).  On July 2, 2019, the Court entered

an Amendment to Order on Amended and Restated Motion for Relief under 11 U.S.C. § 363 and

Substantive Consolidation (Case No. 15-58440 Doc. No. 1125).  It modified the AP Order to

clarify the order in three key ways: the order was without prejudice to any defenses that might be

raised to the Contribution Claim; the lien held by Gateway was only on the net proceeds of Bay

Circle's claims; and, although Bay Circle may have claims against non-debtors, Gateway's lien was only on Bay Circle's claims against the other Debtors.

On June 20, 2019, the Trustee filed a Motion for Order Regarding Standing to Pursue Contribution and/or Subrogation Claims of Bay Circle (Case No. 15-58440 Doc. No. 1093). The Court approved the motion and granted Gateway standing to pursue the Contribution Claim of Bay Circle on July 11, 2019 (Case No. 15-58440 Doc. No. 1137). Gateway filed an adversary complaint on behalf of the Trustee against NRCT with respect to Bay Circle's Contribution Claim on August 13, 2019, initiating Adversary Proceeding No. 19-05284. The adversary proceeding remains pending.

C.    Nilhan Financial Claims

Nilhan Financial was an affiliate of the Debtors when the cases were filed, and NRCT's schedules reflected debts owed to Nilhan Financial in the amount of $13,953,776 and $91,524. On March 20, 2017, an involuntary bankruptcy petition was filed against Nilhan Financial in the United States Bankruptcy Court for the Middle District of Florida. An order for relief was entered and on December 15, 2017, the case was converted to Chapter 7, and a trustee was appointed for Nilhan Financial. On September 4, 2019, Norcross Hospitality, Niloy, and Rohan Thakkar filed a Motion for Order: 1) Amending Schedules; or 2) In the Alternative, Requiring the Trustee to Amend Schedules as Necessary to Reflect Status of Certain Scheduled Claims as Disputed and Subject to Offset (Case No. 15-58440 Doc. No. 1200). They argued the schedules of all Debtors, including NRCT, should be amended by the Trustee to reflect different amounts due to Nilhan Financial. The motion asked the court to order the Trustee to investigate the schedules and amend them.

After a mediation failed, Norcross Hospitality and Rohan and Niloy Thakkar collectively filed an Objection to Scheduled Claims of Nilhan Financial, LLC in each of the Nilhan Developers and NRCT cases seeking to disallow or reduce the scheduled claims of Nilhan Financial or, alternatively, to require the Trustee to amend the schedules to show the Nilhan Financial claims as disputed (Case No. 15-58440 Doc. No. 1269). Norcross Hospitality and the Thakkars objected to the $13,953,776 scheduled claim of Nilhan Financial in the NRCT case in its entirety on the basis that there was no evidence in NRCT's books and records that NRCT ever received any proceeds of the Wells Fargo loan from Nilhan Financial. They contended there was no consideration for any obligation to Nilhan Financial. Moreover, to the extent the number reflected on the NRCT Schedules was an allocation of the Wells Fargo debt, the Wells Fargo debt was satisfied and they contended NRCT had no further obligation to Nilhan Financial.

The Trustee, Gateway, and the Chapter 7 Trustee for Nilhan Financial all responded (Case No. 15-58440 Docs. Nos. 1294, 1295, & 1296) and opposed the motion to require the Trustee to amend and object. The Court held an evidentiary hearing on February 4, 2020. The Court found no basis for allowing a claim to Nilhan Financial in the amount of $13,953,776. While the NRCT Schedules did list a claim in the amount of $13,953,776 to Nilhan Financial, no other evidence supported that liability and no evidence was presented of an actual transfer of funds from Nilhan Financial to NRCT to support the claimed amount. Accordingly, the Court disallowed the Nilhan Financial claim of $13,953,776 in the NRCT case. As no objection was stated to the claim of $91,524, that claim of Nilhan Financial was allowed (Case No. 15-58440 Doc. No. 1347, as amended and restated at Doc. No. 1365).

D.   <u>Plan and Dismissal</u>

At various points throughout the case, the Thakkars have sought to dismiss this and the other Debtors' cases.  Mr. Thakkar, acting *pro se* as manager of the Debtors, filed a Motion to Dismiss (Case No. 15-58440 Doc. No. 1060) on May 20, 2019.  With the assistance of counsel, he filed an Amended Motion to Dismiss on July 9, 2019 (Case No. 15-58440 Doc. No. 1134), which adopted and amended his previous motion to dismiss.  On July 29, 2019, the Trustee filed a response in opposition to the requests for dismissal (Case No. 15-58440 Doc. No. 1160), arguing the proposals to dismiss the cases upon paying some but not all claims constituted an impermissible structured dismissal.  Gateway and the Nilhan Financial Trustee joined in opposing dismissal of the case (Case No. 15-58440 Docs. Nos. 1167 & 1168).

Before the Court heard the requests for dismissal, the Trustee filed a Motion for Order Directing Mediation (Case No. 15-58440 Doc. No. 1193, amended at Doc. No. 1194).  No one objected, and the Court authorized and directed mediation and appointed retired Bankruptcy Judge Mary Grace Diehl as mediator (Case No. 15-58440 Doc. No. 1201).  The Trustee and his counsel, among others, attended the mediation on October 24 and 25, 2019, which then continued telephonically for several days thereafter.

After the mediation concluded with no agreement, the Court scheduled a hearing for January 16, 2020 to consider the Thakkars prior requests for dismissal.  Prior to the hearing, the Trustee, Gateway, and the Nilhan Financial Trustee filed supplemental responses in opposition to dismissal (Case No. 15-58440 Docs. Nos. 1280, 1283 & 1284).  The Court determined dismissal was not appropriate and the issues regarding the Nilhan Financial claims had to be resolved.  The Court scheduled an evidentiary hearing to consider the objection to Nilhan Financial's claims and directed the Trustee to propose a plan to bring the case to a resolution.

11

The Trustee filed a Chapter 11 plan and disclosure statement on February 18, 2020 (Case No. 15-58440 Docs. Nos. 1319 & 1320).  The Court held a hearing on the disclosure statement on March 24, 2020, after which the Trustee filed a First Amended Plan (Case No. 15-58440 Doc. No. 1375) and related disclosure statement (Case No. 15-58440 Doc. No. 1376) on April 9, 2020.  The Trustee filed a Second Amended Plan and disclosure statement on April 21, 2020 (Case No. 15-58440 Docs. Nos. 1404 & 1405).  Mr. Thakkar opposed the Trustee's proposed resolution of the case and objected to the disclosure statement (Case No. 15-58440 Doc. No. 1413) and sought dismissal of the case (Case No. 15-58440 Doc. No. 1394).  The Trustee, Gateway, and the Nilhan Financial Trustee all responded in opposition to dismissal (Case No. 15-58440 Docs. Nos. 1412, 1414 & 1415).

The Court held a hearing on April 30, 2020, after which it converted the Bay Circle case, severed the cases from joint administration, and approved the Trustee's disclosure statement (Case No. 15-58444 Doc. No. 96).  Mr. Thakkar and Rohan and Niloy Thakkar objected to confirmation (Case No. 15-58444 Docs. Nos. 105 & 108, as supplemented at Doc. No. 110).  The Court held a hearing on confirmation of the Trustee's plan on June 9, 2020, at which it considered the Thakkars' objections and directed the Trustee to further amend the plan.

The Trustee filed a Third Amended Plan on June 19, 2020 (Case No. 15-58444 Doc. No. 117).  Mr. Thakkar filed a Statement Regarding Revised Plan (Case No. 15-58444 Doc. No. 118), which included Mr. Thakkar's own proposal to include specific language in the plan to provide an option for a financial instrument to cover the Contribution Claim.  Mr. Thakkar filed a renewed objection to confirmation and requested the Trustee further modify the plan (Case No. 15-58444 Docs. Nos. 126 & 128), and the Trustee filed a brief in support of confirmation (Case No. 15-58444 Doc. No. 127).  The Trustee filed a Fourth Amended Plan (Case No. 15-58444 Doc. No.

12

131) on July 16, 2020, which the Court confirmed on July 16, 2020 (Case No. 15-58444 Doc. No.

132).  The confirmation order provided:

> This order is without prejudice to the Plan Agent or any party in interest seeking
> Bankruptcy Court approval of a financial instrument including, without limitation,
> a bond or letter of credit or similar instrument, that would provide for and guarantee
> payment of the potential maximum liability of the Contribution Action or in
> combination with any remaining Cash on hand would provide for and guarantee
> payment of the potential maximum liability of the Contribution Action (a
> "Contribution Fund"). Upon approval of a Contribution Fund, the Plan Agent or
> any party in interest may request a determination from the Court that the Plan is
> substantially consummated and a final decree may be entered upon such terms as
> the Court deems appropriate. All parties' rights to request approval of a
> Contribution Fund or to oppose such relief are hereby preserved.

Id. at 3.  The Court also denied Mr. Thakkar's request to dismiss the case (Case No. 15-58444

Doc. No. 133).  Mr. Thakkar appealed the confirmation order, but the appeal was dismissed (Case

No. 15-58444 Doc. No. 170), and the effective date of the plan was November 17, 2020 (Case No.

15-58444 Doc. No. 171).

      E.    Fee Applications

MMM filed five interim fee applications.  The Second, Third, and Fourth applications were

unopposed.  All five were granted by the Court, though the Court only approved 90% of the fees

sought in the Fifth Application and reserved the remaining 10% for further consideration upon

final application.  To date, counsel has been paid fees in the amount of $236,332.46.  In its Sixth

and Final Fee Application and Supplement, MMM seeks allowance and payment of an additional

$39,353.55 in fees (including the amount withheld from the Fifth Interim Fee Application), minus

reductions of $15,169.75, for a total of $260,516.26.

MMM filed its First Interim Fee Application (Case No. 15-58440 Doc. No. 1023) on April

19, 2019 for fees and expenses incurred from December 11, 2018 through March 31, 2019.

Counsel not only sought compensation for work done in each of the individual bankruptcy cases,

but it also sought fees and expenses for "general" work done on behalf of all the Debtors, which it divided by all five Debtors.  The First Interim Fee Application included fees and expenses incurred at the outset of the case reviewing the docket, the various schedules, and the examiner's reports, understanding the relationships among the Debtors and other entities, reviewing monthly operating reports for the Debtors, and attending status conferences.  MMM also spent time preparing the motions to retain MMM and GlassRatner, including conducting an extensive conflicts check, and their initial fee applications as well as responding to Mr. Thakkar's motion to reconsider appointing a trustee and Mr. Thakkar's objection to MMM's retention.  In the NRCT case, counsel reviewed the Court's orders and applicable law regarding contribution, requested and reviewed discovery regarding amounts paid to Wells Fargo and Bay Circle, consulted on the Dopp Report and drafted the Preliminary Report, investigated the status of pending litigation, and considered a potential sale of property.

Mr. Thakkar, as managing member of the Debtor, filed an objection (Case No. 15-58440 Doc. No. 1044).  He also filed a motion to continue the hearing on the interim fee application (Case No. 15-58440 Doc. No. 1058), stating he believed the fees were excessive and for services beyond the scope of what was required.  The Trustee responded that Mr. Thakkar did not have standing to object to MMM's fees and it was Mr. Thakkar's conduct that caused the Trustee to incur additional fees and expenses (Case No. 15-58440 Doc. No. 1071).  The Court held a hearing on May 30, 2019, at which Mr. Thakkar withdrew his objection on the express condition that he could object at the time of the final fee application.  The Court authorized the Trustee to pay MMM a total of $59,658.52, consisting of $45,092.00 for fees specific to NRCT plus $14,566.52 for its allocable share of general fees and expenses incurred by all the Debtors (Case No. 15-58440 Doc. No. 1083),

all on an interim basis, stating that objections to the amount of fees and the allocation among Debtors were reserved until the hearing on the final fee application.

MMM filed its Second Interim Fee Application (Case No. 15-58440 Doc. No. 1173) on August 9, 2019 seeking fees and expenses incurred from April 1, 2019 through August 2, 2019. The Second Interim Fee Application covered work in the NRCT case including reviewing discovery from Wells Fargo and Bay Point, conducting settlement discussions with Bay Point and drafting and filing a Rule 9019 motion, requesting turnover of funds in a Raymond James account, discussing revisions to the Dopp report and the Trustee's contribution analysis and objections thereto, drafting a motion to strike pleadings filed by Mr. Thakkar, reviewing pleadings filed by Gateway, preparing for and attending the hearing on the settlement motion and contribution analysis, submitting a brief on modifying the AP Order, obtaining an order on Gateway's standing to prosecute Bay Circle's Contribution Claim, and modifying and consummating the Bay Point settlement. The "general" category applicable to multiple Debtors included fees for preparing and revising MMM's and GlassRatner's fee applications, reviewing and responding to Mr. Thakkar's motion to dismiss, and consultations about Nilhan Financial's claims in the various cases. No objections were filed, and the Court approved the Second Interim Fee Application and authorized the Trustee to pay MMM a total of $68,867.14, consisting of $53,501.00 for fees specific to NRCT plus $15,366.15 for general fees and expenses incurred by all the Debtors split 1/3 between Sugarloaf, Nilhan Developers, and NRCT (Case No. 15-58440 Doc. No. 1198).

MMM filed its Third Interim Fee Application (Case No. 15-58440 Doc. No. 1268) on November 20, 2019 seeking fees and expenses for the period August 3, 2019 through October 31, 2019. It requested $714.00 specifically charged to NRCT and $23,176.77 of "general" time. It included fees and expenses related to preparing for and attending the mediation. The application

15

for NRCT covered emails regarding the Tench Road sale and communications regarding the Trustee's lack of a role in the Contribution Claim being defended by NRCT's equity holders. No objections were filed, and the Court granted the request for $714.00 in fees specific to NRCT and $23,176.78 for 1/3 of the general fees and expenses incurred by all Debtors (split between Sugarloaf, Nilhan Developers, and NRCT), for a total of $23,890.77 (Case No. 15-58440 Doc. No. 1272).

MMM filed its Fourth Interim Fee Application (Case No. 15-58440 Doc. No. 1349) on March 23, 2020 seeking $2,358.50 for fees incurred in the NRCT case, $21,087.67 for 1/3 of the general fees (split between Sugarloaf, NRCT, and Nilhan Developers), and $17,655.50 for 1/2 of the fees related to resolution of Nilhan Financial's claims (split between NRCT and Nilhan Developers), for a total of $41,101.66, covering the period of November 1, 2019 through February 29, 2020. The Fourth Interim Fee Application covered the period after the mediation concluded without a settlement and the Trustee and his counsel considered possible ways to resolve the Nilhan Financial claims and, ultimately, the case. Counsel spent time responding to the motion to require amendment of the schedules and the motion to temporarily allow the Nilhan Financial claims, and significant research on subrogation, setoff, and other theories to reduce the Nilhan Financial claim. No objections were filed, and the Court entered an order approving the fees on April 14, 2020 (Case No. 15-58440 Doc. No. 1380).

MMM filed its Fifth Interim Fee Application (Case No. 15-58444 Doc. No. 141) on July 21, 2020 seeking $32,612.50 for fees incurred in the NRCT case, $11,537.48 for 1/3 of the general fees and expenses (split between Sugarloaf, NRCT, and Nilhan Developers), and $3,421.25 for 1/2 of the fees related to resolution of Nilhan Financial's claims (split between NRCT and Nilhan Developers), for a total of $47,571.23 through July 17, 2020. The Fifth Interim Fee Application

included fees incurred in the plan process and responding to motions to dismiss.  Mr. Thakkar filed an objection on August 11, 2020 (Case No. 15-58444 Doc. No. 152).  The Court held a hearing on August 13, 2020, after which it awarded MMM 90% of its requested fees and 100% of expenses for $42,814.11 and reserved 10% for consideration with a final application (Case No. 15-58443 Doc. No. 170).

MMM filed its Sixth and Final Application for Fees on December 1, 2020 (Case No. 15-58444 Doc. No. 173) seeking $18,643.43 through November 16, 2020.  The Sixth Fee Application sought fees reviewing the status of appeals and researching a stay pending appeal, reviewing Mr. Thakkar's objections to MMM's and GlassRatner's fee applications, responding to discovery requests from Niloy and Rohan Thakkar, and drafting the final fee applications.  MMM also sought the $4,757.12 deferred from the Fifth Interim Fee Application.  The Sixth and Final Application also includes reductions of $15,169.75 based on the Court's order in the Sugarloaf case.  Mr. Thakkar objected (Case No. 15-58444 Doc. No. 176).  The Court held a hearing on January 7, 2021.

MMM thereafter filed a Supplement to Final Fee Application (Case No. 15-58444 Doc. No. 179) in which it seeks approval of a total of $260,516.26 in fees, including the $236,332.46 in fees previously approved, $4,757.12 of the fees deferred from the Fifth Interim Fee Application, $18,643.43 for fees in the Sixth and Final Application, and an additional $15,953.00 incurred between November 16, 2020 and January 7, 2021.  The additional $15,953.00 includes time discussing the status of plan payments and the status of wind up, reviewing the status of various appeals, revising the MMM and GlassRatner fee applications, reviewing Mr. Thakkar's related objections, and preparing for and attending the January 7 hearing on the applications.

The Court held a continued evidentiary hearing on the Applications on February 9, 2021, at which it considered evidence regarding MMM's fees relating to the Contribution Claim and Mr. Thakkar's objection thereto and heard oral argument on all MMM's requested fees and expenses and Mr. Thakkar's objections.

F.    Summary of Objections

Mr. Thakkar objected to MMM's Fifth Interim Fee Application and the Sixth and Final Fee Application.  The Court categorizes the objections to the MMM applications as follows:

1. The filing of a plan and disclosure statement was unnecessary and the time spent was excessive.
2. The time spent on the Nilhan Financial claim was not for the benefit of the estate and excessive.
3. The Trustee and MMM did not have standing to pursue the Contribution Claim against NRCT so its presence at the mediation was not for NRCT's benefit.
4. The work done on the Bay Circle Contribution Claim did not benefit the NRCT estate and the time spent was not properly allocated among the Debtors.
5. The fees for case administration are excessive and unnecessary.

The Court will address each contention.

## II.    LAW ON FEE APPLICATIONS

"Reasonable" compensation for trustees and their attorneys is permitted under 11 U.S.C. § 330 for "actual, necessary services rendered by the trustee" or his attorney.  11 U.S.C. § 330(a)(1)(A).  The burden is on the attorney seeking compensation to prove the requested compensation is reasonable.  See In re Dabney, 417 B.R. 826, 834 (Bankr. N.D. Ga. 2009). Reasonableness is determined by applying a lodestar analysis, looking at the hours reasonably spent and the reasonable hourly charge.  See Norman v. Hous. Auth. of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  To determine whether the hourly rates and number of hours expended are reasonable, the Court must take into account all relevant factors, including those specified in section 330.  The statute provides that courts should consider the following:

(A) the time spent on such services;

18

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). Bankruptcy courts "must also consider whether the bankruptcy assets were administered as economically as possible and whether any of the services rendered were duplicative or non-legal." Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 878 (11th Cir. 1990).

The size of a fee request may invite a close review, but size alone is not grounds to disallow a fee. In re Marshall, 2010 WL 3959612, *63 (Bankr. E.D. Va. Oct. 11, 2010). Instead, the court must consider fees in the context of the tasks undertaken and whether they are reasonable and necessary, looking at the nature of the problems faced, the work done to address them, and any opposition or cooperation the trustee received. The leading case with regard to the factors to be considered in determining a reasonable allowance of compensation for attorneys is Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), in which the court considered the following twelve factors:

(1) the time and labor required;

(2) the novelty and difficulty of the questions presented by the case;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of a case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) time pressures imposed by the client or the circumstances;

(8) the amount involved and results obtained as a result of the attorneys' services;

(9) the experience, reputation and ability of the attorneys;

(10) the desirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

Id. at 717-719.  Each Johnson factor must be considered in light of the other factors.  Neville v. Eufaula Bank & Tr. Co. (In re U.S. Golf Corp.), 639 F.2d 1197, 1205 (5th Cir. 1981).

In order to properly object to an application for compensation, the objecting party must prove, with specific evidence, that the requested fees are unreasonable.  See In re SGE Mortg. Funding Corp., 301 B.R. 915, 917 (Bankr. M.D. Ga. 2003).  A general objection to all fees and expenses is not proper, and "[g]eneral dissatisfaction or a disagreement over business judgment will not suffice" to support an objection to fees.  Id.; see also In re Golf Augusta Pro Shops, Inc., 2004 WL 768576, *2 (Bankr. S.D. Ga. Feb 6, 2004) (overruling objection that generally complained that certain tasks were not necessary and applicant spent too much time on them without providing specific details).  The Court also has an independent duty to investigate the reasonableness of compensation even in the absence of any objection voiced by a party in interest, In re Sarkis Investments Co., LLC, 2019 WL 9243005, *10 (Bankr. C.D. Cal. Sept. 5, 2019), and interim fee awards under section 331 are not final and are subject to further consideration at the conclusion of the case.  Marshall, 2010 WL 3959612, *3.

Additionally, section 330(a)(4)(A) provides that a court should not award compensation for certain services.  The section states:

> Except as provided in subparagraph (B), the court shall not allow compensation
> for—
>> (i) unnecessary duplication of services; or
>> (ii) services that were not—
>>> (I)   reasonably likely to benefit the debtor's estate; or
>>> (II)  necessary to the administration of the case.

11 U.S.C. § 330(a)(4)(A).  Examples of services that do not benefit the estate are work performed on non-bankruptcy matters, services rendered to benefit the debtor personally, and services that

were actually in opposition to the estate's administration.  See In re Watervliet Paper Co., 109 B.R. 733, 735 (Bankr. W.D. Mich. 1989).

But legal services may be "reasonably likely" to benefit a Chapter 11 estate even if no plan of reorganization is proposed or confirmed.  In re Macco Props., Inc., 540 B.R. 793, 868 (Bankr. W.D. Okla. 2015).  "Benefit to the estate . . . is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan."  In re Kitts Dev., LLC, 474 B.R. 712, 721 (Bankr. D.N.M. 2012).  A professional does not have to be 100 percent successful.  In re Cenargo Int'l, PLC, 294 B.R. 571, 596 (Bankr. S.D.N.Y. 2003).  The question is whether a reasonable trustee or his professional would have believed a particular service would benefit the estate.  Id. at 595–96.  For example, counsel's advice and services may benefit the estate "by maximizing value for creditors through an orderly or emergency liquidation of assets by Section 363 sales."  Kitts Dev., 474 B.R. at 721.  Moreover, "[t]he appropriate time for measuring benefit to the estate is as of the time the services are provided, and not at the time the court ultimately reviews the fee application."  Macco Props., 540 B.R. at 868 (quoting In re Schupbach Invs., LLC, 521 B.R. 449 (table) (B.A.P. 10th Cir. 2014)).  Thus, "[c]ourts may allow compensation where counsel's services promoted the bankruptcy process and contributed to the administration of the estate, but did not otherwise provide an economic benefit to the estate."  Id.

"In addition, '[n]ecessary and actual fees are allowable in situations where the fees are unavoidably incurred,' such as responding to events not subject to counsel's control, 'even if they are not of a benefit to the estate.'"  Macco Props., 540 B.R. at 868 (quoting Van Cott, Bagley, Cornwall & McCarthy v. B.R.&F., L.C. (In re Ricci Inv. Co.), 217 B.R. 901, 907 (D. Utah 1998)).  The amount of time reasonably necessary in a particular case depends in part on the vigor with which opponents dispute the issues, and counsel cannot be expected to ignore objections made by

21

opposing parties.  See Macco Props., 540 B.R. at 871.  For example, courts often find services are necessary, even if they do not ultimately benefit the estate, where there are many obstacles to closing a sale and incurring fees is essentially unavoidable.  See id.  Counsel must also comply with the direction of the court.  Ricci Inv. Co., 217 B.R. at 906-07 (finding fees were necessarily incurred where counsel had no choice but to respond to objections and go forward with the scheduling order as mandated by the court).

## III.   OBJECTIONS TO APPLICATIONS

Although Mr. Thakkar raises numerous objections, no dispute exists as to many of the factors the court must consider under section 330 and Johnson.  There is no dispute that the time claimed by MMM was actually spent, and the Court finds the time is accurately recorded.  There is no dispute as to the reasonableness of the rates, that the rates are customary, or that MMM has the skill and experience to render the services.  The Court finds the rates to be reasonable and customary and MMM is skillful and experienced.

The fees for counsel of a trustee are both fixed and contingent.  On one hand, the amount to be paid is fixed by an hourly rate; on the other hand, the fee has an element of contingency since the amount a court will allow is uncertain as is the availability of assets to pay the allowed fees. While MMM previously represented Mr. Glass in other unrelated matters, this prior representation does not factor into the consideration of the nature and length of the professional relationship with the client because prior representations may not be of Mr. Glass as a trustee and, even if they are, he would be serving as a trustee of a different debtor.  In this case, the objections are focused on 1) whether the services were necessary to the administration of or beneficial to the estate, and 2) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the task.

In reviewing the Applications, the Court is particularly aware that representing a Chapter 11 trustee is a unique and complex assignment. The Court notes a Chapter 11 trustee is only appointed in certain circumstances. The appointment of a Chapter 11 trustee is an extraordinary remedy and is the exception, rather than the rule. See In re Intercat, Inc., 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000). Once appointed, a Chapter 11 trustee's duties run to the estate and not a specific creditor. In re Vill. Concepts, Inc., 2019 WL 2252497, *4 (Bankr. E.D. Cal. May 17, 2019). The trustee and counsel are thrown into a case they know nothing about. That is especially true here since the cases were pending for over three years and the docket included over 900 entries by the time the Trustee was appointed. Moreover, when a trustee is appointed in a Chapter 11 case, by definition, something is awry in the case and the trustee is expected to act immediately to secure assets and address the issues causing the appointment. Almost always, a trustee's presence in a Chapter 11 case is unwelcome by the debtor, and obtaining cooperation is typically more challenging than if the attorney were representing the debtor. The Court must therefore consider the situation in which MMM found itself as a result of the Court's appointment of a trustee when reviewing the applications.

A.      Time Spent on Plan and Disclosure Statement

Mr. Thakkar objects to the fees spent in connection with filing and confirming a Chapter 11 plan and contends the Trustee's plan did not benefit the NRCT estate. Fees for this task are spread over the Fourth and Fifth Interim Fee Applications and the Sixth and Final Fee Application and Supplement and total $56,133.13 according to the Court's calculation.

After the mediation concluded with no agreement, the Court scheduled a hearing to consider Mr. Thakkar's requests for dismissal of the NRCT case, which were filed in May and July 2019. At the January 16, 2020 hearing, the Court deferred consideration of the motions to

dismiss pending the resolution by the court of the Nilhan Financial claims, but the Court also requested any plans be filed by February 18, 2020. Mr. Thakkar filed another motion to dismiss on April 20, 2020 (Case No. 15-58440 Doc. No. 1394), which was heard on April 30, 2020 and continued to June 9, 2020 and July 10, 2020 when the Court also considered confirmation of the Trustee's plan. Nilhan Financial, Gateway, and the Trustee objected to dismissal of the case on the basis that provisions needed to be made for resolution of the outstanding issues, notably the Contribution Claim, and payment of any resulting claims (see Case No. 15-58440 Docs. Nos. 1160, 1167, 1168, 1280, 1283, 1284, 1412, 1414 & 1415). The dismissal proposed by Mr. Thakkar (Case No. 15-58440 Doc. No. 1394) did not contemplate payment of any Contribution Claim, a reserve for a claim, or a process for determining the claim post-dismissal.

The Trustee filed a plan in this case on February 18, 2020 (Case No. 15-58440 Doc. No. 1320). The Trustee subsequently amended the plan four times in response to objections by Mr. Thakkar (Case No. 15-58440 Docs. Nos. 1376 & 1404 & Case No. 15-58443 Docs. Nos. 117 & 131) and comments by the Court. Mr. Thakkar objected to many aspects of the plan and even filed a redline version of the Trustee's plan indicating his requested changes, including that he and his sons would be the plan proponent (Case No. 15-58444 Doc. No. 118). He never actually filed a plan and, ultimately, the Court confirmed the Trustee's plan, choosing confirmation over dismissal.[3]

The plan proposes to pay all allowed administrative claims, allowed priority claims, and allowed general unsecured claims on the effective date, or as soon as practicable thereafter. It then provides alternatives: 1) if a final judgment is entered against NRCT on the Contribution Claim, then NRCT's assets will be sold in an amount sufficient to pay allowed claims; 2) alternatively, if

---

[3] The Court denied Mr. Thakkar's Motion Requesting Establishment of Deadlines and Dismissal of Bankruptcy Case of NRCT on July 16, 2020 (Case No. 15-58444 Doc. No. 133).

a final judgment is entered in favor of NRCT on the Contribution Claim, NRCT's assets will not be sold or liquidated. The confirmation order provided confirmation was without prejudice to the Plan Agent or any party in interest seeking Bankruptcy Court approval of a financial instrument to fund a Contribution Fund to provide for and guarantee payment of the potential maximum liability of the Contribution Claim (Case No. 15-58444 Doc. No. 132).

The decision by the Trustee to file a plan was a reasonable decision and necessary for the administration of the estate. The plan provided for immediate payment of the undisputed creditors and for the Trustee, as Plan Agent, to hold assets pending the outcome of the Contribution Claim and to liquidate assets only if necessary to satisfy a judgment in the Contribution Claim. A plan was an appropriate way to address the situation. While Mr. Thakkar sought dismissal of the case, virtually every other party in interest opposed dismissal. It is worth noting that at the hearing on April 30, 2020 the court dismissed the DCT case and converted the Bay Circle case, but it denied Mr. Thakkar's request for dismissal as to Sugarloaf, NRCT, and Nilhan Developers. The Court cannot fault the Trustee for spending time on a position with which the Court agreed.

As with virtually everything in this case, the litigiousness of the Thakkars also increased the cost. The Court notes that the fees incurred in connection with the NRCT plan were $56,133.13 which is about $5,000.00 less than the fees for the Nilhan Developers plan. This lesser amount is reflective of the less complicated nature of the NRCT plan. It only needed to provide for holding funds and assets pending the outcome of the Contribution Claim, while the Nilhan Developers plan provided for different alternatives of distribution based on possible outcomes on appeal. Mr. Thakkar has not identified any specific entries he believes are excessive or unnecessary. The Court has reviewed the time associated with the NRCT plan and cannot identify any entries that are

unnecessary or excessive.  The Court concludes the fees charged for the "plan and disclosure statement" category are reasonable and necessary to the administration of the estate.

      B.     <u>Time Spent on the Nilhan Financial Claim</u>

NRCT's schedules reflected debts to Nilhan Financial of $13,953,776 and $91,524.  On September 4, 2019, Norcross Hospitality, Niloy, and Rohan Thakkar filed a Motion for Order: 1) Amending Schedules; or 2) In the Alternative, Requiring the Trustee to Amend Schedules as Necessary to Reflect Status of Certain Scheduled Claims as Disputed and Subject to Offset (Case No. 15-58440 Doc. No. 1200).  They argued the schedules of all debtors, including NRCT, should be amended by the Trustee to reflect different amounts due to Nilhan Financial.  Norcross Hospitality and the Thakkars contended the $13,953,776 claim listed in NRCT's schedules was just an allocation of the Wells Fargo debt actually owed by Nilhan Financial to Wells Fargo, and not debt owed by NRCT to Nilhan Financial.  The motion asked the court to order the Trustee to investigate the schedules and amend them.

After the mediation failed, Norcross Hospitality, Niloy, and Rohan Thakkar filed an objection to the scheduled claims of Nilhan Financial in the Nilhan Developers and NRCT cases and an amended motion requiring the Trustee to amend the schedules (Case No. 15-58440 Doc. No. 1269).  The Trustee filed a response in opposition (Case No. 15-58440 Doc. No. 1294), stating that he had investigated the claims and found no amendments to the schedules were necessary or required.  The Nilhan Financial Trustee and Gateway also filed objections to the requested relief.

The Court held a hearing on February 4, 2020 at which the Trustee, the Nilhan Financial Chapter 7 trustee, and Gateway participated along with Mr. Thakkar, on behalf of the movants. The Court requested subsequent briefing on certain legal issues.  The Court entered an order on March 21, 2020 disallowing in part and allowing in part the scheduled claims of Nilhan Financial

(Case No. 15-58440 Doc. No. 1347), which it amended on April 3, 2020 (Case No. 15-58440 Doc. No. 1365). The Court disallowed the Nilhan Financial claim of $13,953,776 in NRCT's case, but allowed Nilhan Financial's claim for $91,524, to which there was no objection.

While this litigation was proceeding, the Court had also instructed the Trustee to file a plan in the case. Because the status of Nilhan Financial's claim was uncertain, the Trustee filed a motion to temporarily allow and estimate claims of Nilhan Financial for voting purposes (Case No. 15-58440 Doc. No. 1321). The Court's decision on Nilhan Financial's claim mooted the motion.

Mr. Thakkar argues that the time spent by MMM "defending" the Nilhan Financial claims was excessive and unnecessary. In his view, the Trustee had no stake in the outcome and should have relied on the Nilhan Financial Trustee to do the work. The Court finds the fees incurred to be necessary to the administration of the estate. The Court notes the time allocated to this issue in the Fourth Interim Fee Application is $22,767.50, and the time allocated to it in the Fifth Interim Fee Application is $3,421.25 for a total of $26,188.75.

Norcross Hospitality and the Thakkars asked the Court to require the Trustee to investigate and amend the schedules. The Trustee's counsel spent time doing just that—investigating the claim of Nilhan Financial. It was appropriate for the Trustee to respond to a motion directed to him and to do factual and legal research to understand the issues raised and to respond. Macco Props., 540 B.R. at 868 ("'necessary and actual fees are allowable in situations where the fees are unavoidably incurred,' such as responding to events not subject to counsel's control, 'even if they are not of a benefit to the estate.'" (quoting Ricci Inv. Co., 217 B.R. at 907)). It was also appropriate for the Trustee to appear at the hearing on the claim objections and to brief the issues raised by Norcross Hospitality and the Court. A trustee has the duty to investigate the liabilities

of a debtor (11 U.S.C. § 1106) and to examine claims (11 U.S.C. §§ 1106 & 704).  The motion requested action against the Trustee, so his counsel needed to appear.  The Trustee's participation in the hearing was largely focused on the finality of the schedules, while the Nilhan Financial Trustee focused on the accuracy of the numbers in the Nilhan Financial schedules.  This is an appropriate division of labor for this Trustee and his counsel.  The Court concludes the fees were reasonable and necessary and compensable.

    C.   <u>Mediation</u>

On August 30, 2019, the Trustee, at the Court's suggestion, filed a Motion for Order Directing Mediation, which was amended the next day.  In the motion, the Trustee asked that all disputes, claims and interests in the bankruptcy cases be mediated including, without limitation, nine specific issues.  The issues included several directly related to NRCT: the amount owed to Nilhan Financial by each of the Debtors (including NRCT) and the amount to be distributed on account of such claims in any plan of reorganization; Gateway's adequate protection claim, secured by a replacement lien on the Contribution Claim held by Bay Circle against NRCT; whether any of the remaining real property owned by NRCT should be marketed and sold; whether investment funds owned by NRCT should be sold and liquidated; the potential avoidance and recovery of transfers by Debtors to affiliates or other insiders, including $600,000 transferred by NRCT to Jax Fairfield, LLC; whether any of the Debtors were subject to veil piercing claims; and issues related to any potential plan of reorganization for the Debtors, including the distribution of funds currently held by the Trustee.

No one objected to the request for mediation.  The mediation occurred over two days in October 2019 and continued telephonically for several days thereafter.  Many parties were involved including the Trustee, Mr. Thakkar, his sons, a Nilhan Financial representative, and

Gateway.    In the Third Interim Fee Application, MMM's fees incurred in connection with mediation were $45,039.50, which it divided by four[4] for $11,259.88 attributed to NRCT.    In the Fourth Interim Fee Application, MMM sought $2,019.00 in fees for mediation, which was also divided by four, for a charge of $504.75 for NRCT.

Mr. Thakkar argues the mediation did not benefit NRCT and MMM could not represent the interest of NRCT in any mediation of the Contribution Claim.    He is mistaken as to MMM's role on behalf of NRCT, as the order authorizing mediation specifically identified several issues related to NRCT other than the Contribution Claim, including whether any of NRCT's property should be sold and whether a transfer by NRCT was avoidable, and general topics, including reorganization and distribution of funds, applicable to all Debtors.    The Court concludes it is appropriate for NRCT to share in the cost of mediation, as the time was intended to benefit NRCT, as well as other Debtors.    As the Court explained on its order regarding MMM's fees in the Sugarloaf case (Case No. 15-58442 Doc. No. 201), the Court finds the division of fees for mediation among four of the Debtors to be proper.    MMM made reductions, as reflected in the Sixth and Final Fee Application, to reflect this allocation of fees.    Accordingly, the Court finds the fees MMM seeks relating to the mediation are appropriate.

D.    Contribution Claim

Mr. Thakkar objects primarily to the time charged by MMM to NRCT in connection with the Contribution Claim Bay Circle may have against NRCT.    It is Mr. Thakkar's view that, because NRCT was a potential defendant, the Trustee could incur no time on its behalf.    The Court agrees that some of the time charged to NRCT should have been charged to Bay Circle or divided among various of the debtors but disagrees that no time is chargeable to NRCT.

---

[4] Originally three, but divided by four at Case No. 15-58444 Doc. No. 173-4.

As discussed above, the Court awarded Gateway an adequate protection replacement lien on any Contribution Claim which Bay Circle held.  The AP Order did not specify against whom Bay Circle may have a claim, did not determine Bay Circle had such a claim, and did not fix the amount of any such claim.[5]  Despite numerous requests, Mr. Thakkar took no action on behalf of Bay Circle to determine whether any such claim existed.  The Court denied Mr. Thakkar's requests to dismiss various of the Debtors' cases because the Court wanted the Debtors (all of them) to determine if any contribution or subrogation claims existed, since the Debtors were all co-obligors or guarantors.  The Court suggested to Mr. Thakkar that if a maximum amount of a Contribution Claim could be determined, he might be able to propose a solution for some of the Debtors whereby funds in the amount of the maximum liability were set aside by the appropriate debtor with protections for Gateway until the Court could determine the amount of any contribution or subrogation claim.  Mr. Thakkar took no action on the Contribution Claim.

When the Trustee was appointed, the Court specifically tasked the Trustee with investigating whether Bay Circle may have any contribution or subrogation claims, against whom such claims may exist, and the range of possible outcomes.  The Court expected GlassRatner to use its financial analysis expertise, together with MMM's legal analysis, to report to the Court whether Bay Circle had any potential claims, against whom such claims may lie, and the range of possible outcomes.  MMM and GlassRatner did as the Court requested.  After filing Motions for Rule 2004 exams against Wells Fargo and Bay Point and serving subpoenas, MMM received records from both Wells Fargo and Bay Point as to the amount and source of payments on the loan at issue.  MMM also reviewed documents from the Debtors.  MMM conducted legal research on the requirements for contribution and subrogation.  Ultimately, the Trustee, through MMM, filed

---

[5] Because of this, the District Court determined the AP Order was not final and dismissed Mr. Thakkar's/Bay Circle's appeal of it.  See Case No. 15-58440 Doc. No. 993.

a Preliminary Report on March 27, 2019 setting out the information that had been gathered as to payments and credits and the questions remaining.  The Preliminary Report showed possible outcomes based on different assumptions and defenses.

Thereafter, MMM, with GlassRatner's assistance, continued to refine the analysis and ultimately filed a Motion to Determine Claim on April 29, 2019.  In the Motion to Determine Claim, the Trustee requested the Court to determine that Bay Circle held a claim against NRCT and various non-debtor entities in the amount of $2,675,000.  Mr. Thakkar and his wife and Mr. Thakkar's sons Niloy and Rohan (representing NRCT's equity) filed objections.

In the meantime, the Trustee was negotiating with Bay Point over a settlement of all issues in the case.  In particular, Bay Point continued to hold deeds in lieu on NRCT's property, even though NRCT contended its obligations had been satisfied by the sales of the other Debtors' properties.  Bay Point alleged all the Debtors continued to incur obligations to Bay Point to reimburse it for the fees and costs it continued to incur because DCT and Mr. Thakkar had filed an adversary proceeding against Bay Point alleging it had wrongfully foreclosed on DCT's property.  The Court's order granting judgment on the pleadings to Bay Point was appealed to the District Court and then to the Eleventh Circuit Court of Appeals.  The settlement proposed a return to NRCT of the deeds in lieu, dismissal by DCT of its claim against Bay Point, and broad mutual releases without payment of any additional sums to Bay Point.

The Court held a hearing on May 30, 2019 on a number of matters in the cases.  It heard MMM's First Interim Application for fees, to which M. Thakkar objected.  It heard the Motion to Approve the Settlement with Bay Point.  The Court expressed concern about the breadth of the releases proposed and, in particular, whether the release could impact any subrogation claim held by Bay Circle and on which Gateway was granted an adequate protection lien in the AP Order.

31

The Trustee agreed the Bay Point release would release any subrogation claim of Bay Circle. The Court declined to approve the settlement unless it was amended to leave the parties (Bay Circle, NRCT, and Gateway) in the same position they had been in prior to the settlement. At the hearing, the Court also heard numerous questions about and objections to its AP Order, the answers to which could impact the Trustee's analysis. As a result, the Court provided all the parties in interest an opportunity to submit their contentions as to how the AP Order should be clarified or modified. Finally, the Court heard argument from the parties as to how the Contribution Claim should proceed, in terms of the party asserting the claim, the party defending the claim, jurisdictional issues, and more.

Thereafter, the Bay Point settlement agreement was modified as the Court requested, and the Court approved it (Case No. 15-58440 Doc. No. 1089), resulting in a release of the deeds in lieu back to NRCT. After reviewing the submissions of the parties, the Court modified its AP Order on July 2, 2019 (Case No. 15-58440 Doc. No. 1125) to clarify that Gateway held a replacement lien on the proceeds of any contribution or subrogation claim of Bay Circle and not on the claim itself, that Gateway's adequate protection lien was only on the proceeds of a contribution or subrogation claim against other Debtors and not against non-debtors, and that all defenses of any Debtor or non-debtor party were preserved. The Court entered a Scheduling Order as to how to proceed with the claim (Case No. 15-58440 Doc. No. 1080) and an Order authorizing Gateway to pursue the claim rather than the Trustee (Case No. 15-58440 Doc. No. 1137).

It is evident that MMM's work on the Contribution Claim encompassed multiple categories spread over seven months. It is not appropriate to lump all of these tasks into one category of "contribution claim" because the nature of the tasks differed, and the focus of the tasks evolved. The Court has reviewed the fee applications (the First and Second Interim Fee Applications

encompass all time on the Contribution Claim), the docket, the evidence presented at the hearing, and the record of the case as a whole. The tasks falling within the category of "contribution claim" are as follows:

1. Gathering documents for review;
2. Reviewing documents and conducting or assisting in the conduct of the financial analysis;
3. Conducting legal research;
4. Preparing the Preliminary Report filed March 27, 2019 (Case No. 15-58440 Doc. No. 1007);
5. Preparing the Dopp Report filed April 29, 2019 (Case No. 15-58440 Doc. No. 1030-1);
6. Preparing the Motion to Determine Claim filed April 29, 2019 (Case No. 15-58440 Doc. No. 1030);
7. Preparing for and attending the hearing on May 30, 2019;
8. Revising the AP Order;
9. Revising the Bay Point Settlement Agreement; and
10. Considering Gateway's standing to pursue claim.

Exhibit A to this Order shows the Court's division of time into these categories. The Court will evaluate each category.

      i.   <u>Gathering and Reviewing Documents, Legal Research, and Preliminary Report</u>

After reviewing the fee applications, the Court finds that MMM incurred $5,230.50 in fees gathering documents. This time consists of work contacting Wells Fargo and Bay Point for records of loan payments and credits, preparing Motions and Orders for Rule 2004 exams (Case No. 15-58440 Docs. Nos. 984 & 986), and preparing and serving subpoenas on Wells Fargo and Bay Point (Case No. 15-8440 Doc. No. 987). Next, MMM incurred $5,067.50 in fees in connection with reviewing the documents and assisting GlassRatner with the financial analysis. MMM incurred $2,626.50 in fees in researching the principles of contribution and subrogation including the number of parties liable and the possible defenses and limitations to the claim. Finally, MMM

incurred fees of $6,331.00 in connection with the analysis, preparation, and filing of the Preliminary Report on March 27, 2019.

All of the work in these categories was done at the direction of the Court to investigate whether Bay Circle had claims, against whom the claims could be asserted, and the range of possible claims. In the Court's view, this work was done for the benefit of all the Debtors. While Bay Circle held the claim, and NRCT was a likely target, the AP Order did not limit Bay Circle's claim to any particular debtor. Moreover, without this initial analysis, the Debtors would not have known if they had exposure to a Bay Circle claim. It is important to remember that the analysis was not just about Bay Circle but also about defenses and limitations on any contribution or subrogation claim the other Debtors could have asserted.

The Court's review of the MMM First and Second Interim Fee Applications reflects that 100% of this time was charged to NRCT. None of it was charged to the other Debtors, either directly or as part of the "general" category. The Court notes that, by contrast, GlassRatner charged its time for analysis to all Debtors, and the Court has previously approved this allocation in its Order on Final Application for Compensation for GlassRatner entered in the Sugarloaf Case (Case No. 15-58442 Doc. No. 202). The Court agrees with GlassRatner's allocation and holds that the time in these categories should be divided by four Debtors (excluding DCT which all parties knew had no assets). The total fees charged in these categories is $19,255.50, of which NRCT is responsible only for $4,813.88. The balance of $14,441.62 is disallowed as to NRCT.

ii.     Revisions to Dopp Report and Motion to Determine Claim

After MMM filed the Preliminary Report, it spent the next month considering the effect of the analysis on Bay Circle's claim. It incurred fees of $8,661.00 preparing and filing the Motion to Determine Claim, in which it asked that Bay Circle be allowed a claim against NRCT and others.

34

At the hearing on the Final Fee Applications, MMM contended this motion was just in the nature

of a report and recommendation or an examiner's report.  After review, the Court concludes it was

more.  The Motion did not request the Court to find Bay Circle held a claim in the range of $0 to

$2,675,000 as Mr. Dopp concluded.[6]  Instead, the Motion asked the Court to hold that Bay Circle

held a claim against NRCT.  At the hearing on May 30, 2019 the Court asked MMM what it was

asking of the Court.   Mr. DeBorde responded that he had fully intended to ask the Court to

determine the claim against NRCT but, in light of the objections by NRCT's equity, he asked the

Court to determine the number of parties over which the Contribution Claim would be spread.

Gateway supported the Trustee's request for a determination against NRCT.

The Trustee's actions were appropriate and in accordance with the Court's request, but the

time spent on these actions should have been charged solely to Bay Circle, for whose benefit they

were taken, and not to NRCT.  At the hearing on its Final Fee Application, MMM argued it was

only following the Court's direction and it would be unfair for it to not be paid for the work.  While

the Court directed the action, it at no time explored or expressed an opinion as to which Debtor

should be charged for the work.  At no time did MMM or anyone else ask for any relief or direction

related to payment for work on behalf of Bay Circle.  Obviously, if Bay Circle recovers on the

Contribution Claim against anyone (which could be in excess of Gateway's claim), the recovery

is an asset of the estate subject to administrative expenses and the possibility of surcharge under

11 U.S.C. § 506.  But, even if the result here turns out to be non-payment (which would be

unfortunate), that does not justify charging a Debtor for work which was not necessary to the

---

[6] At the hearing on May 30, 2019, the Court expressed its disagreement with the part of Mr. Dopp's analysis that did not credit the sale of DCT's property to the debt.  The Court stated it believed the minimum claim was in the $300,000 range.

administration of its estate or for its benefit.  Fees in the amount of $8,661.00 are disallowed as chargeable to Bay Circle.

<strong>iii.  <u>Hearing on May 30, 2019</u></strong>

MMM charged NRCT fees of $2,442.00 in connection with the hearing on May 30, 2019. At this hearing, MMM presented its First Interim Fee Application, the Motion to Approve Compromise with Bay Point, and the Motion to Determine the Claim of Bay Circle, and several other miscellaneous matters.[7]  The time spent at this hearing is also charged to Nilhan Developers and Sugarloaf but not to Bay Circle, even though the time at the hearing was also for the benefit of Bay Circle.  The First Interim Fee Application, the request for a bar date and status conference, and the Bay Point settlement impacted all Debtors and were necessary for the administration of all estates.  The Motion to Determine was for the benefit of Bay Circle, but other matters discussed at the hearing, including amendments to the AP Order, a Scheduling Order, and NRCT equity's right to defend NRCT, benefitted NRCT as well as Bay Circle.  The Court concludes the hearing time charged to NRCT should be divided between Bay Circle and NRCT.  NRCT's share is $1,221.00.  The balance of $1,221.00 is disallowed as to NRCT.

<strong>iv.  <u>Revision of AP Order and Bay Point Settlement Agreement</u></strong>

As discussed above, at the hearing on May 30, 2019, the Court heard from MMM and others as to the questions raised by the Court's AP Order.  The Court asked all parties in interest to submit their objections or positions on any changes to be made to the AP Order.  It was appropriate for the Trustee to respond with its issues with the AP Order.  As a result of all the

---

[7] The Court also heard Mr. Thakkar's Request for Status Conference (Case No. 15-58440 Doc. No. 1042), Mr. Thakkar's Motion to Request Trustee/Court to File Motion Establishing a Bar Date for Post-Petition Administrative Expense Claims (Case No. 15-58440 Doc. No. 1043), the Trustee's Motion to Strike Pleadings filed by Mr. Thakkar (Case No. 15-58440 Doc. No. 1056), and Mr. Thakkar's requests to continue the hearings on MMM's First Interim Fee Application, the Motion to Approve Compromise with Bay Point, and the Motion to Determine Claim (Case No. 15-58440 Docs. Nos. 1057 1058, & 1059).

submissions, the Court limited Gateway's claim to proceeds of a claim only against the Debtors (and not non-debtors) and clarified that all defenses remained available. The Court holds this work was necessary and beneficial to both the Bay Circle and NRCT estates. The work helped clarify the claim and defenses for both estates, and both estates should share equally in its cost. The amount incurred with respect to the AP Order is $6,462.00 of which NRCT's share is $3,231.00. The balance of $3,231.00 is disallowed as to NRCT.

Similarly, the Court asked the Trustee to amend the proposed settlement agreement with Bay Point to leave Bay Circle's and the other Debtors' (including NRCT) rights and defenses with respect to subrogation unchanged. This change to the settlement agreement was necessary for both the Bay Circle and NRCT estates. It reinstated a potential subrogation claim for the Bay Circle estate but, as the potential defendant, NRCT's input to the modification was also necessary to ensure its rights and defenses were preserved. Moreover, the settlement directly benefited NRCT because it resulted in the release of deeds in lieu held by Bay Point. The Court concludes the time of $3,649.00 should be divided between NRCT and Bay Circle. NRCT's share is $1,824.50, and the balance of $1,824.50 is disallowed as to NRCT.

v.   Gateway Standing

Finally, at the May 30, 2019 hearing, the Court instructed the Trustee and Gateway to address the procedural posture of the Contribution Claim and determine a method for Gateway to have standing to pursue Bay Circle's Contribution Claim, since Gateway was the real party in interest. As a result, MMM incurred fees of $2,961.00 in preparing and filing a consent order to allow Gateway standing. While these activities were necessary, they were not necessary or beneficial to the NRCT estate, since the order only dealt with standing to pursue Bay Circle's claim. These fees should be charged to Bay Circle only and are disallowed as to NRCT.

37

In summary, the Court disallows $32,340.12 in connection with the Contribution Claim.

E.     Case Administration

Mr. Thakkar argues MMM's fees for case administration are excessive and unnecessary, but he did not pursue this objection at the hearing. Nevertheless, the Court has reviewed the entries related to this work as part of its overall review of the application and finds the fees incurred to be necessary to the administration of the estate. The Court notes the time allocated to case administration totals $30,428.51 across all MMM's fee applications. Because Mr. Thakkar's objection was not prosecuted, the Court does not have specific entries under challenge, and "[g]eneral dissatisfaction or disagreement" is not sufficient to support a claim objection. SGE Mortg. Funding Corp., 301 B.R. at 917. Nevertheless, the Court has reviewed the fees in full. While the fees are not insignificant, they cover MMM's work relating to case administration spanning over two years (from December 2018 through January 2021) and average just $1,170.33 a month. The Court concludes MMM's fees relating to case administration were reasonable and necessary and compensable.

F.     The Court's Independent Review of Fees

The Court has independently reviewed each fee application. Sarkis Investments Co., LLC, 2019 WL 9243005, at *10. As set out in the Court's order in Sugarloaf, the general time entries should have been divided differently and certain "general" entries were attributable only to certain Debtors, including NRCT. MMM has corrected this problem in this final application, showing in detail the reductions and additions in accordance with the Court's Sugarloaf order. The net reduction in their fee request is $15,169.75.

The Court is very familiar with this case, having heard the matters since its inception. The Court has reviewed MMM's time records to determine if any particular entry was unreasonable or unnecessary, or if any series of entries was unreasonable or unnecessary, in the context of the work

performed.  <u>Marshall</u>, 2010 WL 3959612, at *62.  The Court is aware that the amount of fees MMM seeks is significant.  However, the work was necessary and was well done, and the amount of fees reflects the challenging nature of the case and litigiousness of the Thakkars.  After its review, the Court finds no other changes that need to be made to the fee application, except as stated herein.

## I.   CONCLUSION

For the reasons stated above, the Court disallows $32,340.12 of fees charged to NRCT in connection with the Contribution Claim.  The Court allows MMM $228,176.14 in total fees for its First Interim Fee Application through the Sixth and Final Fee Application, as supplemented.  Since MMM has been paid $236,332.46, it must disgorge to the estate the amount of $8,156.32.  This order is without prejudice to MMM seeking to recover from other Debtors the amounts the Court has reallocated or otherwise seeking to exercise any remedies with respect to amounts reallocated.

<b><u>END OF ORDER</u></b>

### EXHIBIT A

### Time Spent on Contribution Action

| First Interim Fee Application | |
|---|---|
| **Category** | **Total** |
| Gather docs | $4,746.50 |
| In. Report | $6,331.00 |
| Init. LR | $2,626.50 |
| Rev docs/FA | $4,389.50 |

| Second Interim Fee Application | |
|---|---|
| **Category** | **Total** |
| AP | $6,462.00 |
| BP revised SA | $3,649.00 |
| Det claim | $8,661.00 |
| Gathering docs | $484.00 |
| Hearing | $2,442.00 |
| Rev docs/FA | $678.00 |
| Standing | $2,961.00 |

| First Interim Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category |
| 02/19/19 | BKCLM | Review order regarding Bay Point debt and maximum amount of contribution. | 0.20 | 123.00 | FWD | Gather docs |
| 02/25/19 | BKMT | Revised and finalized 2004 motion. | 2.30 | 644.00 | TW | Gather docs |
| 02/26/19 | BKMT | Review and modify 2004 request in connection with contribution claim and discuss same with L. Wolgast. | 0.30 | 184.50 | FWD | Gather docs |
| 02/26/19 | BKMT | Revise 2004 motion to Wells Fargo and Bay Point. | 0.70 | 388.50 | LW | Gather docs |
| 02/27/19 | BKMT | Filed 2004 motion and drafted order granting 2004 motion. | 0.70 | 196.00 | TW | Gather docs |
| 02/28/19 | BKMT | Review Order regarding 2004 Motion | 0.10 | 61.50 | FWD | Gather docs |
| 02/28/19 | BKCLM | Drafted subpoenas and supporting documents to Wells Fargo and Bay Point Capital. | 1.70 | 476.00 | TW | Gather docs |
| 02/28/19 | BKCLM | Drafted notice of subpoenas to be filed. | 0.50 | 140.00 | TW | Gather docs |
| 02/28/19 | BKCLM | Telephone conference with R. George regarding serving subpoena for the production of documents on Wells Fargo's registered agent. | 0.20 | 28.00 | ME | Gather docs |
| 03/08/19 | BKCLM | Telephone conference with Wells Fargo regarding subpoena regarding 2004 order. | 0.20 | 111.00 | LW | Gather docs |
| 03/08/19 | BKCLM | Draft letter to Wells Fargo regarding subpoena. | 0.30 | 166.50 | LW | Gather docs |
| 03/12/19 | BKCLM | Telephone conference with Wells Fargo subpoena department regarding subpoena to Wells Fargo. | 0.30 | 166.50 | LW | Gather docs |
| 03/12/19 | BKCLM | Draft fax to Wells Fargo with additional information to identify documents. | 0.40 | 222.00 | LW | Gather docs |
| 03/14/19 | BKCLM | Telephone conference with Wells Fargo regarding subpoena. | 0.10 | 55.50 | LW | Gather docs |
| 03/15/19 | BKCLM | Telephone conference with Wells Fargo regarding subpoena. | 0.30 | 166.50 | LW | Gather docs |
| 03/15/19 | BKCLM | Emails with Wells Fargo regarding subpoena. | 0.20 | 111.00 | LW | Gather docs |
| 03/21/19 | BKCLM | Review bankruptcy docket for filed loan purchase and sale agreement between Wells Fargo and Bay Point Capital. | 0.20 | 28.00 | ME | Gather docs |
| 03/26/19 | BKCLM | Telephone conference with M. Demont regarding subpoena to Wells Fargo. | 0.50 | 277.50 | LW | Gather docs |
| 03/27/19 | BKCLM | L. Wolgast discussion regarding Wells Fargo call. | 0.20 | 123.00 | FWD | Gather docs |
| 03/27/19 | BKCLM | L. Wolgast discussion regarding status of document production by Wells Fargo. | 0.40 | 246.00 | FWD | Gather docs |
| 03/27/19 | BKCLM | Telephone conference with Wells Fargo counsel regarding 2004 subpoena. | 0.50 | 277.50 | LW | Gather docs |

| First Interim Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category |
| 02/15/19 | BKMT | Began drafting 2004 motion to Wells Fargo and Bay Point. | 1.10 | 308.00 | TW | Gather docs |
| 02/27/19 | BKMT | Emails regarding contribution claim in Nilhan and NRCT case and 2004 motion. | 0.20 | 123.00 | FWD | Gather docs |
| 02/15/19 | BKCLM | Review extensive memo on contribution and discuss 2004 request needed. | 0.20 | 123.00 | FWD | Gather docs |
| 02/21/19 | BKCLM | Began drafting initial report regarding contribution claim. | 2.30 | 644.00 | TW | In. Report |
| 02/22/19 | BKCLM | Continued drafting initial report regarding Bay Circle's contribution claim. | 1.30 | 364.00 | TW | In. Report |
| 02/15/19 | BKCLM | Meeting with T. Wagner and F. DeBorde regarding contribution analysis. | 0.80 | 444.00 | LW | In. Report |
| 02/25/19 | BKMT | Meeting with T. Wagner regarding draft report regarding contribution analysis and 2004 motion. | 0.30 | 166.50 | LW | In. Report |
| 02/25/19 | BKCLM | Meeting with T. Wagner regarding contribution analysis. | 0.10 | 55.50 | LW | In. Report |
| 02/25/19 | BKCLM | Revised initial report regarding contribution. | 2.20 | 616.00 | TW | In. Report |
| 02/26/19 | BKCLM | Talk with L. Wolgast regarding contribution claim and liabilities. | 0.20 | 123.00 | FWD | In. Report |
| 02/26/19 | BKCLM | Revise Trustee's initial report regarding liabilities and contribution claim. | 2.10 | 1,165.50 | LW | In. Report |
| 03/21/19 | BKCLM | Review P. Dopp analysis of contribution claim and revised analysis. | 1.00 | 615.00 | FWD | In. Report |
| 03/21/19 | BKCLM | Review P. Dopp analysis regarding contribution claim of Bay Circle. | 0.40 | 222.00 | LW | In. Report |
| 03/21/19 | BKCLM | Extended telephone conference with P. Dopp regarding contribution analysis. | 0.90 | 499.50 | LW | In. Report |
| 03/22/19 | BKCLM | Discuss DCT property and credit bid amount per Scrivener's error and foreclosure deed. | 0.20 | 123.00 | FWD | In. Report |
| 03/22/19 | BKCLM | Review P. Dopp report. | 0.40 | 246.00 | FWD | In. Report |
| 03/27/19 | BKCLM | Telephone conference with R. Glass, P. Dopp and F. DeBorde regarding contribution analysis and strategy regarding tomorrow's hearing. | 0.50 | 277.50 | LW | In. Report |
| 03/27/19 | BKCLM | Draft and file notice regarding preliminary contribution analysis. | 0.30 | 166.50 | LW | In. Report |
| 03/27/19 | BKCLM | Review draft contribution analysis. | 0.20 | 111.00 | LW | In. Report |
| 03/28/19 | BKCLM | Review calculation of adequate protection payment and potential overpayment to Bay Circle. | 0.40 | 246.00 | FWD | In. Report |
| 02/28/19 | BKCLM | Discuss contribution claim analysis. | 0.20 | 123.00 | FWD | In. Report |

| First Interim Fee Application | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category | |
| 02/28/19 | BKCLM | Emails to and from P. Dopp regarding contribution claim. | 0.20 | 123.00 | FWD | In. Report | |
| 02/15/19 | BKCLM | Review contribution memo and discuss impact of same on analysis. | 0.20 | 123.00 | FWD | Init LR | |
| 02/15/19 | BKCLM | Discuss contribution analysis and amount of claims and proper methods for calculating contribution analysis. | 0.80 | 492.00 | FWD | Init LR | |
| 02/14/19 | BKCLM | Drafted and revised memo containing research. | 2.50 | 700.00 | TW | Init. LR | |
| 02/14/19 | BKCLM | Meeting with T. Wagner regarding researching contribution claim and apportionment of damages. | 0.20 | 111.00 | LW | Init. LR | |
| 02/14/19 | BKCLM | Review and revise memorandum regarding contribution analysis. | 0.70 | 388.50 | LW | Init. LR | |
| 02/14/19 | BKCLM | Researched process for determining the amount of contribution under Georgia law and national trends. | 2.00 | 560.00 | TW | Init. LR | |
| 02/11/19 | BKCLM | Pulled marshalling order and researched contribution under Georgia law. | 0.90 | 252.00 | TW | Init. LR | |
| 02/15/19 | BKCLM | Discussed method of calculation of contribution. | 1.20 | 336.00 | TW | Rev docs/FA | |
| 02/11/19 | BKMT | Discuss contribution and subrogation analysis needed and review Court's order on subrogation claim. | 0.10 | 61.50 | FWD | Rev docs/FA | |
| 02/11/19 | BKCLM | Meet with P. Dopp and R. Glass regarding next steps in case. | 0.70 | 430.50 | FWD | Rev docs/FA | |
| 02/11/19 | BKCLM | Meeting with R. Glass and P. Dopp regarding analysis of contribution claim and case strategy. | 0.90 | 499.50 | LW | Rev docs/FA | |
| 02/11/19 | BKCLM | Send documents to P. Dopp regarding contribution claim. | 0.20 | 111.00 | LW | Rev docs/FA | |
| 02/11/19 | BKCLM | Prepare for meeting with R. Glass and P. Dopp. | 0.40 | 222.00 | LW | Rev docs/FA | |
| 02/14/19 | BKCLM | Emails with P. Dopp regarding starting date and discussion of payments. | 0.40 | 246.00 | FWD | Rev docs/FA | |
| 02/14/19 | BKCLM | Pull and save documents regarding contribution analysis. | 0.20 | 28.00 | ME | Rev docs/FA | |
| 02/18/19 | BKCLM | Emails with J. Murovitz regarding production of information regarding contribution analysis. | 0.20 | 123.00 | FWD | Rev docs/FA | |
| 02/20/19 | BKCLM | Reviewed bankruptcy docket for basis of Good/SEG Gateway's $2,675,000 claim. | 2.00 | 560.00 | TW | Rev docs/FA | |
| 03/14/19 | BKCLM | Review documents produced by Bay Point Capital Partners in response to subpoena. | 0.30 | 166.50 | LW | Rev docs/FA | |

| First Interim Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category |
| 03/15/19 | BKCLM | Discuss contribution claim analysis and banking returns. | 0.30 | 184.50 | FWD | Rev docs/FA |
| 03/15/19 | BKCLM | Reviewed documents turned over by Bay Point in response to subpoena regarding payments made by Debtors. | 2.10 | 588.00 | TW | Rev docs/FA |
| 03/18/19 | BKCLM | Reviewed documents provided by Bay Point. | 0.20 | 56.00 | TW | Rev docs/FA |
| 02/28/19 | BKCLM | Analysis of Bay Point Capital debt and payments | 0.70 | 388.50 | LW | Rev docs/FA |
| 02/28/19 | BKCLM | Review and analyze settlement agreement with Wells Fargo. | 0.70 | 388.50 | LW | Rev docs/FA |

| Second Interim Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category |
| 05/31/19 | BKCLM | Review court's adequate protection order regarding subrogation claim. | 0.30 | $ 166.50 | LW | AP |
| 05/31/19 | BKCLM | Telephone conference with S. Story regarding researching issues regarding subrogation claim. | 0.20 | $ 111.00 | LW | AP |
| 06/03/19 | BKCLM | Research regarding subrogation claim held by Bay Circle. | 3.00 | $ 375.00 | SJS | AP |
| 06/04/19 | BKCLM | Meeting with S. Story regarding subrogation research. | 0.30 | $ 166.50 | LW | AP |
| 06/04/19 | BKCLM | Continue research regarding subrogation claim under Georgia law. | 3.00 | $ 375.00 | SJS | AP |
| 06/05/19 | BKCLM | Draft and revise memo on subrogation. | 3.00 | $ 375.00 | SJS | AP |
| 06/06/19 | BKCLM | Talk with L. Wolgast regarding Good Gateway as well as arguments in connection with subrogation. | 0.30 | $ 184.50 | FWD | AP |
| 06/06/19 | BKCLM | Discuss subrogation argument with L. Wolgast and research on same. | 0.20 | $ 123.00 | FWD | AP |
| 06/06/19 | BKCLM | Meeting with S. Story regarding research regarding subrogation. | 0.20 | $ 111.00 | LW | AP |
| 06/07/19 | BKCLM | Research regarding subrogation claim. | 1.70 | $ 943.50 | LW | AP |
| 06/07/19 | BKCLM | Draft brief regarding subrogation claim under adequate protection order. | 1.80 | $ 999.00 | LW | AP |
| 06/10/19 | BKCLM | Research issues related to potential subrogation claim of Bay Circle. | 1.30 | $ 721.50 | LW | AP |
| 06/19/19 | BKCLM | Discuss standing order and subrogation arguments. | 0.30 | $ 184.50 | FWD | AP |
| 06/19/19 | BKCLM | Finalize and file brief regarding Adequate Protection Order. | 1.00 | $ 555.00 | LW | AP |
| 06/19/19 | BKCLM | Prepare service list and e-file Trustee's Subrogation Brief. | 0.30 | $ 42.00 | ME | AP |
| 06/20/19 | BKCLM | Review D. Dotson's brief and W. Jones' brief on revision of adequate protection order. | 0.50 | $ 307.50 | FWD | AP |
| 06/13/19 | BKCLM | Draft position statement regarding modifying Adequate Protection Order regarding subrogation claim, motion to approve consent order regarding Gateway standing and consent order regarding Gateway standing to pursue contribution claim. | 1.30 | $ 721.50 | LW | AP |
| 06/03/19 | BK363 | Draft amendment to settlement agreement with Bay Point, notice of filing amendment and 9019 order and revise same | 2.40 | $ 1,332.00 | LW | BP revised SA |

| Second Interim Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category |
| 06/04/19 | BK363 | Numerous calls with J. Isbell regarding changes to settlement agreement and order and talk with R. Glass regarding status. | 1.00 | $    615.00 | FWD | BP revised SA |
| 06/04/19 | BK363 | Multiple emails regarding settlement with Bay Point. | 0.90 | $    553.50 | FWD | BP revised SA |
| 06/04/19 | BK363 | Multiple emails regarding settlement with Bay Point. | 0.90 | $    499.50 | LW | BP revised SA |
| 06/05/19 | BK363 | Emails with H. Sewell and W. Jones regarding 9019 order and settlement agreement amendment regarding settlement with Bay Point. | 0.10 | $      55.50 | LW | BP revised SA |
| 06/06/19 | BK363 | Talk with R. Glass regarding amendment to Bay Point settlement agreement. | 0.10 | $      61.50 | FWD | BP revised SA |
| 06/10/19 | BK363 | Telephone conference and emails with court clerk regarding 9019 order regarding settlement with Bay Point Capital. | 0.10 | $      55.50 | LW | BP Revised Sa |
| 06/14/19 | BKCLM | Search Georgia Clerks Authority for all UCC's filed by Wells Fargo against all Georgia entity Debtors to determine if original UCC's were assigned and/or continued and search Florida Secured transaction Registry regarding same for Bay Circle Properties, LLC. | 0.50 | $      70.00 | ME | BP Revised SA |
| 06/28/19 | BK363 | Emails from J. Isbell regarding dismissal and regarding hearing on consent order. | 0.30 | $    184.50 | FWD | BP Revised SA |
| 06/06/19 | BK363 | Finalize and file amendment to settlement with Bay Point Capital, notice of same and 9019 order. | 0.40 | $    222.00 | LW | BP Revised SA |
| 04/23/19 | BKCLM | Review P. Dopp's report and subrogation analysis and talk with L. Wolgast regarding contribution analysis in P. Dopp's report and changes to Bay Circle claim. | 0.20 | $    123.00 | FWD | Det Claim |
| 04/23/19 | BKCLM | Telephone conference with F. DeBorde regarding draft analysis by P. Dopp and revisions regarding same. | 0.30 | $    166.50 | LW | Det Claim |
| 04/23/19 | BKCLM | Telephone conference with P. Dopp regarding revisions to contribution analysis. | 0.30 | $    166.50 | LW | Det Claim |
| 04/24/19 | BKCLM | Talk with L. Wolgast regarding subrogation analysis. | 0.10 | $      61.50 | FWD | Det Claim |
| 04/24/19 | BKCLM | Review calculations of Bay Circle's contribution claim under two assumptions. | 0.20 | $    123.00 | FWD | Det Claim |
| 04/24/19 | BKCLM | Discuss P. Dopps contribution analysis. | 0.20 | $    123.00 | FWD | Det Claim |
| 04/24/19 | BK363 | Revise Bay Point contribution analysis. | 0.20 | $    123.00 | FWD | Det Claim |

| Second Interim Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category |
| 04/24/19 | BKCLM | Emails with L. Wolgast regarding P. Dopp analysis. | 0.20 | $ 123.00 | FWD | Det claim |
| 04/24/19 | BK363 | Telephone conference with P. Dopp regarding revised contribution analysis. | 0.10 | $ 55.50 | LW | Det claim |
| 04/24/19 | BKCLM | Email R. Glass regarding contribution analysis. | 0.10 | $ 55.50 | LW | Det claim |
| 04/24/19 | BKCLM | Telephone conference with P. Dopp regarding revised contribution analysis. | 0.40 | $ 222.00 | LW | Det claim |
| 04/24/19 | BKCLM | Telephone conference with F. DeBorde regarding P. Dopp's revised contribution analysis. | 0.20 | $ 111.00 | LW | Det claim |
| 04/25/19 | BKCLM | Revise motion for determination of the amount of Bay Circle's contribution claim and extensive discussions with L. Wolgast regarding motion. | 0.50 | $ 307.50 | FWD | Det claim |
| 04/25/19 | BKCLM | Talk with L. Wolgast regarding finalizing P. Dopp's subrogation analysis and need to discuss same with Good Gateway. | 0.20 | $ 123.00 | FWD | Det claim |
| 04/25/19 | BKCLM | Revise contribution claim analysis and motion and call R. Glass regarding report. | 0.60 | $ 369.00 | FWD | Det claim |
| 04/25/19 | BKCLM | Review and revise P. Dopp report regarding contribution on claim. | 1.00 | $ 555.00 | LW | Det claim |
| 04/25/19 | BKCLM | Telephone conference and emails with P. Dopp regarding revisions to report. | 0.50 | $ 277.50 | LW | Det claim |
| 04/25/19 | BKCLM | Draft motion to determine amount of Bay Circle's contribution claim. | 1.00 | $ 555.00 | LW | Det claim |
| 04/25/19 | BKCLM | Review revised P. Dopp report regarding contribution claim and revise same. | 0.50 | $ 277.50 | LW | Det claim |
| 04/25/19 | BKCLM | Revise contribution report and motion regarding same. | 1.50 | $ 832.50 | LW | Det claim |
| 04/25/19 | BKCLM | Emails with W. Jones regarding draft contribution report. | 0.20 | $ 111.00 | LW | Det claim |
| 04/26/19 | BKCLM | Discuss P. Dopp's report regarding Bay Circle contribution claim and hearing thereon. | 0.20 | $ 123.00 | FWD | Det claim |
| 04/29/19 | BKCLM | Review default rule regarding contribution claim analysis. | 0.20 | $ 123.00 | FWD | Det claim |
| 04/29/19 | BKCLM | Discuss with L. Wolgast contribution claim report filing and notice needed. | 0.40 | $ 246.00 | FWD | Det claim |
| 04/30/19 | BKCLM | Revise notice of hearing regarding trustee's motion regarding Bay Circle contribution claim and discuss same with court clerk. | 0.30 | $ 166.50 | LW | Det claim |
| 04/30/19 | BKCLM | Draft notice of hearing regarding trustee's motion regarding Bay Circle contribution claim | 0.30 | $ 166.50 | LW | Det claim |

| | | Second Interim Fee Application | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | | Tkpr | Category |
| 05/22/19 | BKCLM | Email regarding contribution claim objection and detailed discussion of H. Sewell objection. | 0.20 | $ | 123.00 | FWD | Det claim |
| 05/23/19 | BKCLM | Review equity response to contribution claim analysis and their objection thereto. | 0.50 | $ | 307.50 | FWD | Det claim |
| 05/24/19 | BKCLM | Talk with L. Wolgast regarding hearing on contribution objections and next step. | 0.60 | $ | 369.00 | FWD | Det claim |
| 05/24/19 | BKCLM | Emails with H. Sewell and D. Dotson regarding contribution motion. | 0.20 | $ | 111.00 | LW | Det claim |
| 05/28/19 | BKCLM | Discuss objections and contribution motion. | 0.20 | $ | 123.00 | FWD | Det claim |
| 05/28/19 | BKCLM | Draft direct examination outline for P. Dopp. | 1.50 | $ | 832.50 | LW | Det claim |
| 05/28/19 | BKCLM | Continue drafting and revise outline for direct examination of P. Dopp. | 1.00 | $ | 555.00 | LW | Det claim |
| 05/29/19 | BKCLM | Discuss contribution claim. | 0.20 | $ | 123.00 | FWD | Det claim |
| 05/29/19 | BKCLM | Talk with H. Sewell regarding next steps in connection with contribution claim, adversary proceeding and other issues associated with prosecution of claim. | 0.20 | $ | 123.00 | FWD | Det claim |
| 05/31/19 | BKCLM | Discuss revise contribution claim regarding four solvent debtors. | 0.10 | $ | 61.50 | FWD | Det claim |
| 06/21/19 | BKCLM | Review equities' objection to contribution and subrogation claim. | 0.40 | $ | 246.00 | FWD | Det claim |
| 04/03/19 | BKCLM | Review and revise confidentiality agreement regarding document production by Wells Fargo. | 0.40 | $ | 222.00 | LW | Gather docs |
| 04/09/19 | BKCLM | Review confidentiality agreement and emails with M. Demont regarding same. | 0.20 | $ | 111.00 | LW | Gather docs |
| 04/17/19 | BKCLM | Download document production from Wells Fargo Bank. | 0.20 | $ | 28.00 | ME | Gather docs |
| 04/16/19 | BKCLM | Emails regarding Wells Fargo account. | 0.20 | $ | 123.00 | FWD | Gather docs |
| 05/29/19 | BKCLM | Telephone conference with H. Sewell regarding contribution claim issues. | 0.40 | $ | 222.00 | LW | Hearing |
| 05/30/19 | BKCLM | Attend hearing regarding motion to approve settlement with Bay Point Capital, motion to determine Bay Circle contribution claim and MMM First Fee Application. | 4.00 | $ | 2,220.00 | LW | Hearing |
| 04/19/19 | BKCLM | Extended call with P. Dopp and R. Glass regarding reconciliation of claim and subrogation claim and report needed as well as reconciliation of Bay Point claim. | 0.20 | $ | 123.00 | FWD | Rev docs/FA |
| 04/19/19 | BKCLM | Telephone conference with R. Glass, P. Dopp and F. DeBorde regarding contribution analysis. | 1.00 | $ | 555.00 | LW | Rev docs/FA |

| Second Interim Fee Application | | | | | | |
|---|---|---|---|---|---|---|
| Date | Task | Description | Hours | Fee Amt | Tkpr | Category |
| 06/03/19 | BKCLM | Draft motion and order regarding granting Gateway standing regarding subrogation/contribution claims. | 0.90 | $ 499.50 | LW | Standing |
| 06/06/19 | BKCLM | Telephone conference with F. DeBorde regarding standing stipulation and pleadings due June 20 and argument for same. | 0.20 | $ 111.00 | LW | Standing |
| 06/19/19 | BKCLM | Discuss standing Order. | 0.20 | $ 123.00 | FWD | Standing |
| 06/19/19 | BKCLM | Review Gateway markup to standing proposal and talk with L. Wolgast regarding same. | 0.40 | $ 246.00 | FWD | Standing |
| 06/19/19 | BKCLM | Discuss Gate Goodway standing. | 0.20 | $ 123.00 | FWD | Standing |
| 06/19/19 | BKCLM | Review Gateway's revisions to standing order. | 0.10 | $ 55.50 | LW | Standing |
| 06/19/19 | BKCLM | Meeting with F. DeBorde regarding standing order. | 0.10 | $ 55.50 | LW | Standing |
| 06/19/19 | BKCLM | Revise standing order. | 0.10 | $ 55.50 | LW | Standing |
| 06/19/19 | BKCLM | Emails with A. Alexander regarding revised order. | 0.10 | $ 55.50 | LW | Standing |
| 06/19/19 | BKCLM | Finalize and file motion to approve standing order and proposed standing order. | 0.20 | $ 111.00 | LW | Standing |
| 06/20/19 | BKCLM | Finalize and file stipulation regarding Gateway standing regarding contribution claims. | 0.20 | $ 111.00 | LW | Standing |
| 06/21/19 | BKCLM | Discuss standing order. | 0.20 | $ 123.00 | FWD | Standing |
| 06/27/19 | BKCLM | Meeting with Good Gateway. | 0.20 | $ 123.00 | FWD | Standing |
| 06/28/19 | BKCLM | Discuss scheduling meeting with Good Gateway and finalize same. | 0.30 | $ 184.50 | FWD | Standing |
| 06/28/19 | BKCLM | Email regarding motion for entry regarding Good Gateway's standing with subdivision claims. | 0.20 | $ 123.00 | FWD | Standing |
| 06/28/19 | BKCLM | Discuss notice of hearing on consent order for Good Gateway. | 0.20 | $ 123.00 | FWD | Standing |
| 06/28/19 | BKCLM | Discuss status of hearing and consent order. | 0.20 | $ 123.00 | FWD | Standing |
| 07/03/19 | BKCLM | Discuss standing order. | 0.20 | $ 123.00 | FWD | Standing |
| 07/03/19 | BKCLM | Discuss consent order on standing. | 0.20 | $ 123.00 | FWD | Standing |
| 07/16/19 | BKCLM | Discuss filing of intent to pursue NRCT own contribution claim. | 0.20 | $ 123.00 | FWD | Standing |
| 07/17/19 | BKCLM | Discuss standing motion and contribution claims. | 0.40 | $ 246.00 | FWD | Standing |

**Distribution List**

Frank W. DeBorde
Lisa Wolgast
Morris, Manning & Martin, LLP
3343 Peachtree Road, N.E.
Suite 1600
Atlanta, Georgia 30326

Ronald L. Glass
Glass Ratner Advisory & Capital Group
Suite 1225
3445 Peachtree Road, NE
Atlanta, GA 30326

M. Denise Dotson
M. Denise Dotson, LLC
PO Box 767
Avondale Estates, GA 30002

David Weidenbaum
Office of the U.S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, Georgia 30303